UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Sue Ann Garber, | ) | Civil Action No. 5:14-1173-DCN-KDW |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | REPORT AND RECOMMENDATION |
| Carolyn W. Colvin, Acting | ) | OF MAGISTRATE JUDGE |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

This appeal from a denial of social security benefits is before the court for a Report and

Recommendation ("Report") pursuant to Local Civil Rule 73.02(B)(2)(a) (D.S.C.). Plaintiff

brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of the final decision

of the Commissioner of Social Security ("Commissioner") denying his claim for Disability

Insurance Benefits ("DIB") pursuant to the Social Security Act ("the Act"). For the reasons that

follow, the undersigned recommends that the Commissioner's decision be affirmed.

I.      Relevant Background

    A.      Procedural History

On April 23, 2012, Plaintiff filed an application for DIB under Title II of the Act, 42

U.S.C. §§ 401-433, alleging disability onset date of April 13, 2012. Tr. 169-70, 207. After

being denied both initially, Tr. 82-83, and on reconsideration, Tr. 95-96, Plaintiff requested a

hearing before an Administrative Law Judge ("ALJ"), Tr. 115-17. The ALJ conducted a hearing

on November 19, 2013, taking testimony from Plaintiff and Vocational Expert ("VE") Tenetta

Watson-Coleman. Tr. 42-61. The ALJ issued an unfavorable decision on December 17, 2013. Tr.

27-37. On February 14, 2014, Plaintiff requested Appeals Council review of the decision, Tr. 7,

but the Appeals Council declined, Tr. 1-6, making the ALJ's decision the Commissioner's final

decision for purposes of judicial review.  Plaintiff brought this action seeking judicial review of the Commissioner's decision in a Complaint filed on March 28, 2014.  ECF No. 1.

B.     Plaintiff's Background

Born July 16, 1952, Plaintiff was 59 years old at the time of her alleged onset date of April 13, 2012, and 61 years old at the time of the ALJ's decision. Tr. 207. Plaintiff completed some college and received specialized training in an EEG program at Costa Mesa Community College in California. Tr. 212. Plaintiff has past relevant work ("PRW") as an EEG Technologist, Neurodiagnostic Technologist, and Travel EEG Technologist. *Id.* Plaintiff seeks DIB due to mental conditions of major depressive disorder, depression, and anxiety. Tr. 211.

C.     The Administrative Proceedings

1.     Plaintiff's Testimony

A hearing was held on November 19, 2013, at which Plaintiff appeared with counsel and testified. Tr. 42-57. Plaintiff testified that she was 61 years old and had two years of college education but did not obtain an Associate's Degree. Tr. 46. Plaintiff testified that since 1998 she worked for Northeast Medical Center as the coordinator for the EEG department. *Id.* Her job duties included responsibility for payroll and performing neuro-diagnostic procedures. *Id.* Plaintiff also worked for Carolina Neurological Testing performing procedures for various chiropractor offices. Tr. 47. Plaintiff worked as an EEG tech for Presbyterian Hospital and for Cleveland Clinic Hospital; she also worked for Charlotte Mecklenburg Hospital, Mobile Neuro-Diagnostic Company, Metrolina Neurological Associates, and Carolinas Medical Center. Tr. 47-48. After her alleged onset date Plaintiff worked for East Coast Pet Services as a dog walker. Tr. 49. Plaintiff testified that she was fired from three jobs—the first because she had a severe panic attack and could not perform her job duties, the second time because she had problems with

some employees, and the third time she was not hired after her probationary period due to personality conflicts with her supervisor. Tr. 50.

Plaintiff testified that she was unable to work because, although she suffered from depression since she was young, her symptoms have progressed, her diagnoses have changed, and she has "gotten worse." Tr. 50. Plaintiff testified she has been diagnosed with Bipolar II disorder and that she has severe panic attacks, severe chronic anxiety, recurrent major depression, and dysthymia.[1] Tr. 50-51. Plaintiff stated she has "a severe change in [her] daily aspects of life and personal hygiene, [and] loss of interest." Tr. 51. She stated she "suffer[s] now from short-term memory loss, [and] confusion" and has "great difficulty understanding even now very simple instructions." *Id.* Plaintiff stated she gets "flustered" and then becomes "overwhelmed." *Id.* She testified that she mostly stays at home and does not socialize. Her social activity is "basically going to [her] therapist and going to [her] psychiatrist." *Id.* Plaintiff stated that she does not "do anything around the house" and her personal hygiene has deteriorated to the extent that she "could go for a week or more without bathing." *Id.* Plaintiff testified she sometimes wants to stay in bed all day, she takes a nap every day, and sometimes she stays up all night. *Id.* When asked about medications to control her symptoms, Plaintiff testified that her medications keep her "stable." *Id.* She stated that she still has symptoms but not to the point of having "another nervous breakdown where [she has] to be hospitalized since [her] last hospitalization and it keeps [her] from wanting to commit suicide." Tr. 51-52.

---

[1] Dysthymia, sometimes referred to as mild, chronic depression, is less severe and has fewer symptoms than major depression. With dysthymia, the depression symptoms can linger for a long period of time, often two years or longer. Those who suffer from dysthymia can also experience periods of major depression—sometimes called "double depression." *See* http://www.webmd.com/depression/guide/chronic-depression-dysthymia (last visited June 10, 2015).

The ALJ referred to an opinion from Plaintiff's psychiatrist that indicated Plaintiff's symptoms were "in-check on the low stress conditions" and that Plaintiff could work in an environment with little interaction with co-workers or the public and no production quotas. Tr. 52. Plaintiff stated she did not think she could be reliable enough to work because she would have to "call in" on those days when she could not get out of bed, and she did not know if, due to her short-term memory loss, she would be able to follow simple instructions. *Id.* Plaintiff testified that she drove herself to the hearing but got lost. Tr. 53. Plaintiff stated she lived with her "long-term boyfriend of 11 years." *Id.* When asked to describe her typical day Plaintiff stated she can get up late or get up early, she has coffee, she does not prepare any meals or do any cooking, she does not clean, and she lies down on the couch and will "basically zone out and watch television." *Id.*

In response to questions from her attorney Plaintiff stated that she has lost about 15 pounds because when she goes into a "really bad depression" she does not eat. Tr. 53. Plaintiff also testified that her hands shake and she has difficulty writing, and she is "unable to work on a computer or type and the shaking is noticeable." Tr. 54. Plaintiff stated she has had those problems since before her nervous breakdown in August 2011. *Id.*

With regard to the work she did after her onset date, Plaintiff confirmed that she worked typically less than 15 hours a week and earned less than $500.00 a month. Tr. 54. She confirmed that she left that job because she was starting to miss some days and "just couldn't handle it anymore." Tr. 55. Plaintiff testified that she does not make beds, do dishes, dust, cook, or do any outside chores. *Id.* Plaintiff stated her boyfriend does the cooking, and she does not visit friends and friends do not visit her. *Id.* Plaintiff stated that her daily naps range from two-to-three hours. Tr. 56. Plaintiff stated she takes seven or eight medications a day including asthma medication.

*Id.* She testified that, on average, twice a week she has a panic attack that lasts an hour or two. *Id.* She takes medication to calm herself, but then is exhausted and because she is "emotionally and physically drained, [the exhaustion] could last all day." Tr. 56-57.

2.    VE Testimony

Vocational Expert Tenetta Watson-Coleman testified at the hearing and characterized Plaintiff's past work as an EEG technician as "SVP:6, skilled, strength level medium, DOT 078.362-022" and her work as a department manager as "SVP:7, skilled, strength level sedentary, DOT 189.167-022. Tr. 58. The ALJ asked the VE to assume a hypothetical individual of Plaintiff's age, education, and work experience "who has no exertional limitations but would be limited to simple, repetitive tasks, no interaction with the general public, only occasional interaction with coworkers and supervisors. The person would require a job with very low production quotas." *Id.* The ALJ asked if the individual would be able to do Plaintiff's PRW, and the VE responded in the negative. *Id.* When asked what other jobs were available for such an individual in the national economy, the VE identified the following jobs: garment bagger, light, SVP:1, unskilled, 9,850 in South Carolina, 666,860 in the national economy, DOT 920.687-018; addresser, sedentary, SVP:2, unskilled, 500 in South Carolina, 96,360 in the national economy, DOT 209.587-010; and weight tester, sedentary, SVP:2, unskilled, 8,750 in South Carolina, 434,170 in the national economy, DOT 539.485-010. Tr. 58-59.

Plaintiff's counsel asked the VE if the jobs she named would be eliminated if the hypothetical individual were to miss one day per week due to her psychologically-based problems. Tr. 59. The VE responded that "would eliminate those jobs" and all jobs in the national economy. *Id.* In closing Plaintiff's counsel stated that Plaintiff had a "long and excellent work history, sometimes working two jobs at a time." Tr. 59. He noted that Plaintiff had two

5

documented suicide attempts and a nervous breakdown in August of 2011. Tr. 59-60. Plaintiff's

counsel asked the ALJ to consider that she met the criteria for Listing 12.04 Affective Disorders.

## II.    Discussion

### A.    The ALJ's Findings

In her December 17, 2013, decision, the ALJ made the following findings of fact and

conclusions of law:

> 1.  The claimant meets the insured status requirements of the Social Security Act through December 31, 2016.
>
> 2.  The claimant has not engaged in substantial gainful activity since April 13, 2012, the amended alleged onset date (20 CFR 404.1571 *et seq*.).
>
> 3.  The claimant has the following severe impairments: a bipolar affective disorder, a panic disorder without agoraphobia, dysthymia, a personality disorder and an occupational problem (20 CFR 404.1520(c)).
>
> 4.  The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).
>
> 5.  After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following non-exertional limitations: simple, routine tasks, no interaction with the general public, only occasional interaction with coworkers and supervisors, and very low production quotas.
>
> 6.  The claimant is unable to perform any past relevant work (20 CFR 404.1565).
>
> 7.  The claimant was born on July 16, 1952 and was 59 years old, which is defined as an individual of advanced age, on the alleged disability onset date (20 CFR 404.1563).
>
> 8.  The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9.  Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from April 13, 2012, through the date of this decision (20 CFR. 404.1520(g)).

Tr. 29-37.

B.    Legal Framework

1.    The Commissioner's Determination-of-Disability Process

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are "under a disability," defined as:

inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]

42 U.S.C. § 423(d)(1)(A).

To facilitate a uniform and efficient processing of disability claims, regulations promulgated under the Act have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g., Heckler v. Campbell*, 461 U.S. 458, 460 (1983) (discussing considerations and noting "need for efficiency" in considering disability claims).  An examiner must consider the following:  (1) whether the claimant is working; (2) whether the claimant has a severe impairment; (3) whether that impairment meets or equals an impairment included in the

Listings;[2] (4) whether such impairment prevents claimant from performing PRW; and (5) whether the impairment prevents the claimant from performing specific jobs that exist in significant numbers in the national economy. *See* 20 C.F.R. § 404.1520. These considerations are sometimes referred to as the "five steps" of the Commissioner's disability analysis. If a decision regarding disability may be made at any step, no further inquiry is necessary. 20 C.F.R. § 404.1520(a)(4) (providing that if Commissioner can find claimant disabled or not disabled at a step, Commissioner makes determination and does not go on to the next step).

A claimant is not disabled within the meaning of the Act if she can return to PRW as it is customarily performed in the economy or as the claimant actually performed the work. *See* 20 C.F.R. Subpart P, § 404.1520(a), (b); Social Security Ruling ("SSR") 82–62 (1982). The claimant bears the burden of establishing her inability to work within the meaning of the Act. 42 U.S.C. § 423(d)(5).

Once an individual has made a prima facie showing of disability by establishing the inability to return to PRW, the burden shifts to the Commissioner to come forward with evidence that claimant can perform alternative work and that such work exists in the regional economy. To satisfy that burden, the Commissioner may obtain testimony from a VE demonstrating the existence of jobs available in the national economy that claimant can perform despite the

---

[2] The Commissioner's regulations include an extensive list of impairments ("the Listings" or "Listed impairments") the Agency considers disabling without the need to assess whether there are any jobs a claimant could do. The Agency considers the listed impairments, found at 20 C.F.R. Part 404, Subpart P, Appendix 1, severe enough to prevent all gainful activity. 20 C.F.R. § 404.1525. If the medical evidence shows a claimant meets or equals all criteria of any of the listed impairments for at least one year, he will be found disabled without further assessment. 20 C.F.R. § 404.1520(a)(4)(iii). To meet or equal one of these Listings, the claimant must establish that his impairments match several specific criteria or be "at least equal in severity and duration to [those] criteria." 20 C.F.R. § 404.1526; *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *see Bowen v. Yuckert*, 482 U.S. 137, 146 (1987) (noting the burden is on claimant to establish his impairment is disabling at Step 3).

existence of impairments that prevent the return to PRW. *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). If the Commissioner satisfies that burden, the claimant must then establish that she is unable to perform other work. *Hall v. Harris*, 658 F.2d 260, 264–65 (4th Cir. 1981)*; see generally Bowen*, 482 U.S. at 146, n.5 (regarding burdens of proof).

2.     The Court's Standard of Review

The Act permits a claimant to obtain judicial review of "any final decision of the Commissioner made after a hearing to which he was a party." 42 U.S.C. § 405(g). The scope of that federal court review is narrowly-tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the Commissioner applied the proper legal standard in evaluating the claimant's case. *See id.*, *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Walls v. Barnhart*, 296 F.3d at 290 (citing *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)).

The court's function is not to "try these cases de novo or resolve mere conflicts in the evidence." *Vitek v. Finch*, 428 F.2d 1157, 1157–58 (4th Cir. 1971); *see Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (citing *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). Rather, the court must uphold the Commissioner's decision if it is supported by substantial evidence. "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 390, 401; *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005). Thus, the court must carefully scrutinize the entire record to assure there is a sound foundation for the Commissioner's findings, and that her conclusion is rational. *See Vitek*, 428 F.2d at 1157–58; *see also Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that

decision must be affirmed "even should the court disagree with such decision." *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

C.     Analysis

Plaintiff argues that the ALJ: (1) failed to properly assess medical opinion evidence; (2) did not explain her residual functional capacity ("RFC") assessment; (3) failed to meet her burden at Step Five of the sequential evaluation process; and (4) failed to adequately evaluate her credibility. Pl's Br. 16, 23, 31-32, ECF No. 21.

1.     Treating Physician Opinion

Plaintiff acknowledges that the ALJ properly "gave significant evidentiary weight to the opinion of the treating psychiatrist Dr. Agnes Devenyl as to [Plaintiff's] need for low stress conditions." Pl.'s Br. 18. However, Plaintiff alleges that the ALJ erred in granting less weight to the opinion of Dr. Devenyl that Plaintiff "is unable to engage in substantial employment based on only one treatment record." Pl.'s Br. 19. Plaintiff asserts that the ALJ "only cites a GAF score from that record." *Id.* Plaintiff argues the ALJ failed to discuss treatment records from other physicians that supported Dr. Devenyl's opinion, and the ALJ failed to consider the cyclical nature of Plaintiff's depression. Pl.'s Br. 20-21. Plaintiff argues that the ALJ, for the same reasons she gave controlling weight to other opinions by Dr. Devenyl, should have given controlling weight to the opinion regarding performance of sustained work activity. Pl.'s Br. 22. Plaintiff asserts her case "should be remanded for consideration of the treating specialist opinion that either adopts the opinion, or in the alternative provides a more meaningful basis for rejecting the opinion than the citation to one GAF score." *Id.*

The Commissioner contends that the "ALJ provided legitimate reasons to discount Dr. Devenyl's opinion, which concerned an issue reserved exclusively to the ALJ as fact-finder."

Def.'s Br. 12. Additionally, the Commissioner argues that the ALJ was entitled to rely on the inconsistency between Dr. Devenyl's opinion and the GAF score she assessed on the same day. *Id.* The Commissioner also asserts that Plaintiff's allegation "that the ALJ should have accorded controlling weight to Dr. Devenyl's opinion because no contrary medical opinion evidence exists" also must fail because the ALJ accorded significant weight to the contrary medical opinion issued by state agency psychological expert Dr. Williams. *Id.*

> a.      Dr. Devenyl's Opinion

On October 21, 2013, at the request of Plaintiff Dr. Devenyl submitted a handwritten letter "To Whom This May Concern" on Plaintiff's behalf. Tr. 407. Dr. Devenyl noted that Plaintiff had been a patient of Waccamaw Center for Mental Health since April 30, 2012, and that Dr. Devenyl had been "working with her since 5/13/13." *Id.* Dr. Devenyl noted Plaintiff's current diagnoses as: "Bipolar II Disorder; Panic Disorder without Agoraphobia; Dysthymic Disorder; Personality Disorder NOS and Occupational Problem." *Id.* Dr. Devenyl opined that Plaintiff's "current medications, along with help of counseling seems to keep her symptoms in check under low stress conditions. However she is not able to maintain a gainful employment, nor work in her previous work situation." *Id.*

In a Follow-up Psychiatric Medical Assessment dated November 12, 2013,[3] Plaintiff reported to Dr. Devenyl that she had "several panic attacks since last seen." Tr. 408. Dr. Devenyl reiterated her support for Plaintiff's disability application noting Plaintiff "is not able to maintain a gainful employment due to panic and depressive [symptoms], cannot tolerate any stressful circumstance." *Id.* Dr. Devenyl noted Plaintiff's diagnoses of Bipolar II Disorder, Occupational

---

[3] Dr. Devenyl signed the Assessment on November 14, 2013. Tr. 410.

Problem, Panic Disorder without Agoraphobia, Dysthymic Disorder, and Personality Disorder NOS. Tr. 409. Dr. Devenyl gave Plaintiff a GAF rating of 60.[4] *Id.*

> b.    ALJ's Consideration of Opinion Evidence

Social Security Ruling 96-2p provides that if a treating source's medical opinion is "well-supported and 'not inconsistent' with the other substantial evidence in the case record, it must be given controlling weight[.]" *See also* 20 C.F.R. § 404.1527(c)(2) (providing treating source's opinion will be given controlling weight if well-supported by medically-acceptable clinical and laboratory diagnostic techniques and not inconsistent with other substantial evidence in the record); *Craig v. Chater*, 76 F.3d 585, 590 (4th Cir. 1996) (finding a physician's opinion should be accorded "significantly less weight" if it is not supported by the clinical evidence or if it is inconsistent with other substantial evidence).

The Social Security Administration typically accords greater weight to the opinion of a claimant's treating medical sources, because such sources are best able to provide "a detailed, longitudinal picture" of a claimant's alleged disability. 20 C.F.R. § 404.1527(c)(2). However,

---

[4] The Global Assessment of Functioning Scale (GAF) was introduced by the American Psychiatric Association in 1987 within the third edition of the Diagnostic and Statistical Manual of Mental Disorders (DSM), a reference publication used to standardize diagnostic categories and conditions. . . . The three areas examined by the GAF are:
  Psychological - obsessions, panic attacks, etc.
  Social and Interpersonal - maintaining friendships, personal hygiene, etc.
  Occupational - work attendance, ability to follow directions, etc.
The GAF scoring system works on a numeric scale from 0-100, broken down into groups of ten.
70-61 - Some mild symptoms (e.g., depressed mood and mild insomnia) OR some difficulty in social or occupational functioning (e.g., theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships.
60-51 - Moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social or occupational functioning (e.g., few friends, conflicts with peers).
50-41 -Serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social or occupational functioning (e.g., no friends).
*See*    http://www.seniorhomes.com/p/understanding-the-global-assessment-of-functioning-scale/

"the rule does not require that the testimony be given controlling weight." *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992) (per curiam). Rather, "[c]ourts evaluate and weigh medical opinions pursuant to the following non-exclusive list:  (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist." *Johnson v. Barnhart*, 434 F.3d at 654; 20 C.F.R. § 404.1527. Treating source medical opinions are entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527. In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight. As explained in SSR 96-2p,

> a finding that a treating source medical opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to "controlling weight," not that the opinion should be rejected. Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 CFR 404.1527. . . . In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.

SSR 96–2p. The Ruling also requires that an ALJ's decision "contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.* In reviewing the ALJ's consideration of the opinions of Plaintiff's physician, the court is focused on whether the ALJ's opinion is supported by substantial evidence. The court is not to "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Craig*, 76 F.3d at 589.

_____

(last visited June 10, 2015).

In this case, in making her findings at Step Four regarding Plaintiff's RFC, the ALJ set forth Plaintiff's testimony regarding her condition, as well as some of Plaintiff's medical history including opinions of treating physicians and non-treating agency psychologists. Tr. 32-35. The ALJ provided a general summary of Dr. Devenyl's two opinions and attributed significant weight to her October 21, 2013 opinion. Tr. 34.   As to Dr. Devenyl's November 2013 assessment, the ALJ noted the following:

> The undersigned considered Dr. Devenyl's opinion and allowed it some evidentiary weight in concluding the claimant limited to work involving simple, routine tasks with no interaction with the general public, only occasional interaction with co-workers and supervisors, and very low production quotas based upon her treating relationship with the claimant. However, the other medical evidence of record does not support the conclusion that the claimant is unable to maintain any gainful employment. In fact, Dr. Devenyl's conclusions at the November 14, 2013 visit included information that the claimant had a global assessment of functioning (GAF) of 60, which, according to the Diagnostic and Statistical Manual of Mental Disorders-5th Edition (DSM-V), is inconsistent with disabling psychological symptoms.

Tr. 34.

Having considered the record evidence and the arguments of the parties as set forth in their briefs, the undersigned concludes that the ALJ appropriately considered the opinions of Dr. Devenyl. The ALJ discussed the opinions, substantially applied the required factors when evaluating the opinions, and explained why she was discounting the November 2013 opinion. Tr. 34. Plaintiff asserts the ALJ gave less weight to Dr. Devenyl's decision based on Plaintiff's GAF score recorded by Dr. Devenyl in the November 2013 assessment. While GAF scores are not alone a permissible indicator of disability and have been discontinued in the most recent edition of the DSM-V[5], the ALJ is not prohibited from considering them in determining whether a

---

[5] The undersigned notes that the ALJ stated in her decision that according to the DSM-V Plaintiff's GAF score was inconsistent with disabling psychological symptoms. Tr. 34. This is incorrect as the Fifth Edition of the DSM, published in May 2013, eliminated GAF scores. *See*

treating physician's opinion is consistent with her own treatment notes when evaluating the reliability of the physician's opinion regarding a claimant's level of functioning. *See Parker v. Astrue*, 664 F. Supp. 2d 544, 557 (D.S.C. 2009) (stating that "Plaintiff's GAF score is only a snapshot in time, and not indicative of Plaintiff's long term level of functioning"). In any event, consideration of this score this was not the sole reason the ALJ discounted Dr. Devenyl's opinion. The ALJ also discussed the medical evidence, including mental RFC assessments of state agency psychologists, and described how it either supported or contradicted Dr. Devenyl's opinions. Tr. 34-35. The ALJ noted the September 2012 opinion of Dr. Anna P. Williams, that Plaintiff "might have difficulty sustaining concentration and pace on complex tasks, but that she should be able to attend to and perform tasks without special supervision," and the November 2012 opinion of Dr. Michael Neboschick that Plaintiff "was limited to unskilled work not primarily with the public." Tr. 35-36 (citing Exhibits 1A, 4A, and 9A).

The ALJ, as part of her duties in weighing the evidence, properly relied on medical evidence in making her RFC determination and resolving conflicts of evidence. Where the record contains conflicting medical evidence, it is the responsibility of the ALJ to consider and weigh the evidence, and resolve the conflict. *See Craig*, 76 F.3d at 589 (stating that the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]"); *Hays v. Sullivan*, 907 F.2d at 1456 (holding that it is the ALJ's responsibility, not the court's, to determine the weight of evidence and resolve

---

http://www.jaapl.org/content/42/2/173.full (last visited June 10, 2015). The undersigned recommends this error to be deemed as harmless. *See Mickles v. Shalala*, 29 F.3d 918, 921 (4th Cir. 1994) (applying harmless error analysis in Social Security case); *see also Ward v. Comm'r of Soc. Sec.*, 211 F.3d 652, 656 (1st Cir. 2000) (holding that a remand is not necessary if it would "amount to no more than an empty exercise"); *Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989) ("No principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a

conflicts of evidence). As the ALJ articulated sufficient reasons for assigning less weight to Dr. Devenyl's November 2013 opinion, the undersigned recommends that this challenge to the ALJ decision be dismissed. Furthermore, even if the evidence Plaintiff highlights could support a different result, the court's role is not to second-guess the ALJ's findings. *See Johnson*, 434 F.3d at 653 (finding that under the substantial evidence standard, the court does not reweigh conflicts in the evidence or substitute its judgment for that of the ALJ). Accordingly, the undersigned recommends that the determination in this regard be affirmed.

    2.  RFC Assessment

  Plaintiff claims that although the ALJ properly performed a "function by function assessment as set forth in the regulations" her assessment "is not supported by substantial evidence or adequately explained to support a finding that the assessment is supported by substantial evidence." Pl.'s Br. 25. Plaintiff further asserts that the ALJ failed to consider the vocational impact of Plaintiff's hand tremors and asthma. *Id.* at 29-30. The Commissioner argues that "the ALJ provided legitimate reasons for her RFC finding and properly considered the opinion evidence as well as the evidence related to Plaintiff's mental impairments." Def.'s Br. 15. The Commissioner also contends that "the ALJ's conclusion that Plaintiff did not have severe asthma or severe hand tremors was reasonable, and the inclusion of additional limitations in the RFC related to those conditions was not warranted." *Id.* at 10.

  "RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996). Specific to claims of mental impairments, the Ruling provides:

  *The psychiatric review technique.* The psychiatric review technique described in 20 CFR 404.1520a and 416.920a and summarized on the Psychiatric Review

different result.").

> Technique Form (PRTF) requires adjudicators to assess an individual's limitations and restrictions from a mental impairment(s) in categories identified in the "paragraph B" and "paragraph C" criteria of the adult mental disorders listings. The adjudicator must remember that the limitations identified in the "paragraph B" and "paragraph C" criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process. The mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings in 12.00 of the Listing of Impairments, and summarized on the PRTF.

*Id.* at *4 (italics in original). These additional assessment items at issue expound upon the analysis of the four functional areas to have been considered at Steps Two (determining severe impairments) and Three (determining whether impairments meet or equal a Listed impairment). Listing 12.00 catalogs these additional functions to be considered as to all mental listings. Summarized, the considerations regarding a claimant's activities of daily living include consideration of whether the claimant has "serious difficulty performing [the daily living functions] without direct supervision, or in a suitable manner, or on a consistent, useful, routine basis, or without undue interruptions or distractions." 20 C.F.R. Subpt. P., App. 1, Listing 12.00. The discussion of assessment of "social functioning" is expanded to include the claimant's "capacity to interact independently, appropriately, effectively, and on a sustained basis with other individuals . . . ," as well as his or her "cooperative behaviors, consideration for others, awareness of others' feelings, and social maturity." *Id.* Specifically regarding work settings, the considerations include assessment of evidence of a claimant's "interactions with the public, responding appropriately to persons in authority (e.g., supervisors), or cooperative behaviors involving coworkers." *Id.* The B criteria of "concentration, persistence, and pace," are further defined as "the ability to sustain focused attention and concentration sufficiently long to permit the timely and appropriate completion of tasks commonly found in work settings." *Id.* Listing

12.00 states that this area of functioning "can be discussed in terms of [the claimant's] ability to work at a consistent pace for acceptable periods of time and until a task is completed, and . . . to repeat sequences of action to achieve a goal or an objective." *Id.* Finally, the B criteria of "episodes of decompensation" are expanded to include "exacerbations or temporary increases in symptoms or signs accompanied by a loss of adaptive functioning, as manifested by difficulties in performing activities of daily living, maintaining social relationships, or maintaining concentration, persistence, or pace." *Id.* Such episodes "may be inferred from medical records showing significant alteration in medication; or documentation of the need for a more structured psychological support system (e.g., hospitalizations, placement in a halfway house, or a highly structured and directing household); or other relevant information in the record about the existence, severity, and duration of the episode." *Id.* The ruling also provides:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

*Id.* at *7. Further, "[t]he RFC assessment must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence." *Id.*

a.    Plaintiff's Mental Impairments

In assessing Plaintiff's RFC, the ALJ considered the entire record and gave legitimate reasons for her assessment. The ALJ found, through the date last insured, Plaintiff had the RFC to perform a full range of work at all exertional levels but with the non-exertional limitations of

"simple, routine tasks, no interaction with the general public, only occasional interaction with coworkers and supervisors, and very low production quotas." Tr. 31. In making this determination the ALJ reviewed and analyzed Plaintiff's testimony from the administrative hearing, and her medical records, including treatment records and opinions from Dr. Kashfia Hossain, Dr. Ana-Zully Teran,[6] Dr. Devenyl, and state agency psychologists. Tr. 33-35. At step two of the sequential evaluation process the ALJ identified Plaintiff's severe mental impairments and at step three the ALJ analyzed the impairments under Paragraph B of Listings 12.04, 12.06, and 12.08 and found that Plaintiff had moderate restriction in activities of daily living; marked difficulties in social functioning; and moderate difficulties with regard to concentration, persistence or pace. Tr. 30-31.

Plaintiff submits the ALJ erred in finding that she had only moderate restrictions in activities of daily living. Pl.'s Br. 25. In support of this finding the ALJ cited to a Function Report completed by Plaintiff in September 2012 in which Plaintiff indicated that she had "some issues with her personal care including wearing the same clothes for days and not bathing and brushing her teeth on a regular basis;" however Plaintiff cared for her dog, she prepared simple meals for herself on a sporadic basis, "did some household chores such as wiping down the counters and sweeping the floor," drove, and shopped via computer. Tr. 30 (citing Exhibit 9E). The ALJ also noted that in March 2013 Plaintiff reported to her mental health provider that she was working part-time. *Id.* (citing Exhibit 13F, page 1). Plaintiff submits the activities cited by the ALJ are not supportive of a finding that her restrictions in activities of daily living are only moderate and these "occasional and sporadic activities cited by the ALJ would not require any

---

[6] The ALJ incorrectly identifies Dr. Teran as Dr. Terah.

intensive or sustained activity similar to what would be expected in a work environment." Pl.'s Br. 26.

Plaintiff further alleges that the ALJ ignored contradictory evidence when she found that Plaintiff had only moderate restrictions in concentration, persistence, and pace. Pl.'s Br. 27. Plaintiff cites to a February 15, 2013 opinion by Dr. Teran that noted Plaintiff "'still presents with, lack of concentration, difficulty focusing'" and a May 13, 2013 note of Dr. Devenyl that Plaintiff was unable to continue her prior work due to "'memory problems and just 'panicking', 'freezing', not remembering how to do tasks . . . .'" *Id.* In determining that Plaintiff had moderate difficulties with regard to concentration, persistence or pace the ALJ noted Plaintiff's "reported difficulties with maintaining concentration and focus; however treatment notes from the Waccamaw Mental Health Center have consistently described the claimant's concentration, memory and attention as intact." Tr. 31 (citations to record omitted).

Upon review of the record, the undersigned finds that the ALJ's conclusion is supported by substantial evidence. "Simply because the plaintiff can produce conflicting evidence which might have resulted in a contrary interpretation is of no moment." *Washington v. Astrue*, 659 F. Supp. 2d 738, 753 (D.S.C. 2009) (citing *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972)). *See generally Jackson v. Astrue*, 8:08–2855–JFA, 2010 WL 500449, at *10 (D.S.C. Feb. 5, 2010) ("[A]n ALJ is not required to provide a written evaluation of every piece of evidence, but need only minimally articulate his reasoning so as to make a bridge between the evidence and its conclusions.") (internal quotation and citations omitted). Further, in her RFC assessment, the ALJ discussed in more detail Plaintiff's mental impairments, the record evidence, and her findings with respect to those impairments. Tr. 32-35.

The undersigned notes that none of Plaintiff's treating physicians assessed Plaintiff's RFC or indicated Plaintiff had "marked" limitations in her ADLs or "marked" difficulties in concentration, persistence and pace. However, state agency psychologists who reviewed Plaintiff's medical records determined that Plaintiff was moderately limited in all areas.[7] Opinions from non-examining physicians, such as state agency reviewers, can constitute substantial evidence in support of an ALJ's decision over the opinion of an examining physician so long as the opinions from the non-examining physicians are consistent with the record as a whole. *See Smith v. Schweiker*, 795 F.2d 343, 345-46 (4th Cir. 1986); *Stanley v. Barnhart*, 116 F. App'x 427, 429 (4th Cir. 2004) (disagreeing with the argument that the ALJ improperly gave more weight to residual functional capacity assessments of non-examining state agency physicians over those of examining physicians and finding that the ALJ properly considered evidence provided by those physicians in context of other medical and vocational evidence); *see also* 20 C.F.R. § 404.1527(e)(2)(i) ("State agency medical and psychological consultants and other program physicians, psychologists, and other medical specialists are highly qualified . . . [and] are also experts in Social Security disability evaluation. Therefore, administrative law judges must consider [their] findings and other opinions . . . as opinion evidence"). In evaluating the opinions from the state agency psychologists the ALJ attributed them "significant evidentiary weight in concluding the claimant limited to simple, routine tasks with no interaction with the general public as such conclusions are supported by the other medical evidence of record . . . ." Tr. 35.

The undersigned recommends this challenge to the ALJ's decision be dismissed. The ALJ's RFC assessment is consistent with the objective medical evidence and other record

---

[7] *See* Ex. 1A, Sept. 3, 2012 Assessment of Anna P. Williams, Ph.D., Tr. 75-78; Ex. 4A, Nov. 14,

evidence. The ALJ has the duty to weigh the evidence, resolve material conflicts in the record, and decide the case accordingly. *See Richardson v. Perales*, 402 U.S. at 399. The ALJ met her statutory and regulatory obligation to assess all of the evidence in the record. This court may not reweigh the evidence or substitute its own judgment for the Commissioner's, even if it finds the evidence is susceptible to more than one rational interpretation. *See Hays*, 907 F.2d at 1456. For the foregoing reasons, the undersigned finds that the ALJ properly accounted for Plaintiff's mental impairments, and substantial evidence supports the ALJ's conclusion that Plaintiff retained the RFC to work at all exertional levels but with the limitations of "simple, routine tasks, no interaction with the general public, only occasional interaction with coworkers and supervisors, and very low production quotas." Tr. 31.

b.      Plaintiff's Physical Impairments

Plaintiff asserts that the "medical evidence supported a finding that her hand tremor was a medically determinable impairment[] that should have been evaluated by the ALJ in the RFC findings." Pl.'s Br. 30. Plaintiff further contends that given her age, "the proper consideration of her asthma was an important factor in her case. She did not need to show the asthma was disabling in itself, only that it would cause her some physical restrictions." *Id.* at 31. Plaintiff asserts the ALJ failed to properly consider this impairment. *Id.* The Commissioner argues that the evidence did not support a finding that Plaintiff's hand tremors and asthma affected her ability to perform basic work activities. Def.'s Br. 9-10. Therefore, the Commissioner argues, "the ALJ's conclusion that Plaintiff did not have severe asthma or severe hand tremors was reasonable, and the inclusion of additional limitations in the RFC related to those conditions was not warranted." *Id.* at 10.

---

2012 Assessment of Michael Neboschick, Ph.D., Tr. 88-91.

"As an initial matter, [Plaintiff] bears the burden of producing evidence demonstrating how her impairments affected her functioning during the relevant time period." *Bradshaw v. Colvin*, C/A No. 0:13-1665-PJG, 2014 WL 4417364, at *7 (D.S.C. Sept. 8, 2014) (citing 20 C.F.R. § 404.1512(c); *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004) ("The burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five."); *Creegan v. Colvin*, No. 1:13CV5, 2014 WL 3579659 (W.D.N.C. July 21, 2014) ("It is the claimant's burden, however, to establish her RFC by demonstrating how her impairment impacts her functioning.")).

At step two of the sequential evaluation process the ALJ noted Plaintiff's hand tremors and asthma, but concluded "that the conditions have not represented severe impairments at any time relevant to this decision." Tr. 30. The ALJ found:

> Specifically, the medical evidence of record does not reveal that the claimant has been treated for exacerbation of her asthma at any time relevant to this decision. As to her complaints of tremors, the claimant did present to her treating mental health provider at Waccamaw Mental Health Center in November 2012 with complaints of tremor in her hands (Exhibit 12F, page 1) and it was noted in March 2013 (Exhibit 13F, page 1) the claimant demonstrated some shaking in her hands, however, other records from the provider consistently describe the claimant as not demonstrating any abnormal movements or tics. (Exhibits 12F, 13F and 15F)[.]

*Id.* In her discussion of Plaintiff's RFC the ALJ noted Plaintiff's hearing testimony that she could not use a computer or type because her hands shook, and that she had asthma and her panic attacks caused difficulty with her breathing. Tr. 32.

In addition to the references of Plaintiff's hand tremors cited by the ALJ, Plaintiff notes an October 2012 treatment record that noted she was having problems with dexterity. Pl.'s Br. 30 (citing Tr. 328). As the Commissioner notes, this same record indicates her symptoms "improved since she started taking Depakote." Def.'s Br. 10. Plaintiff further notes a January 2013 treatment record wherein Plaintiff indicated her hand had been shaking badly. Pl.'s Br. 30 (citing Tr. 395).

The Commissioner contends the "ALJ noted the instances in which Plaintiff complained about hand tremors, (Tr. 392, 395, 399), but stressed that Plaintiff's provider consistently described her as not demonstrating any abnormal movements or tics (Tr. 30, 329, 331, 393, 402, 405, 409)." Def.'s Br. 10.

Whether Plaintiff suffers from hand tremors or asthma is not the issue; instead, the issue is whether these conditions are severe impairments that interfere with Plaintiff's ability to work. *See Evans v. Heckler*, 734 F.2d 1012, 1014 (4th Cir. 1984) (noting that an impairment is not severe "only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience."). Moreover, 20 C.F.R. § 404.1508 requires that the severity of the impairment be established by "medically acceptable clinical and laboratory diagnostic techniques" rather than only by a statement of symptoms. Here, the undersigned notes the absence of objective medical evidence demonstrating severity and the medical records do not establish that these impairments affect Plaintiff's ability to work. Accordingly, the ALJ did not err in her analysis of Plaintiff's hand tremors and asthma.

Because the ALJ's assessment of Plaintiff's RFC is supported by substantial evidence and addresses Plaintiff's physical and mental impairments, the undersigned finds Plaintiff's argument with respect to this issue is without merit.

3.    Step Five Evaluation

Plaintiff asserts that if the only work she could perform was sedentary or light work, then the Medical Vocational Guidelines would direct a finding of disability. Pl.'s Br. 31. Plaintiff asserts that in order to avoid such a finding, the ALJ needed to cite a significant number of jobs at the medium level of exertion that Plaintiff could perform. *Id.* at 32. Plaintiff further contends

the ALJ erred in failing to explain "why she used section 204 of the Medical-Vocational Guidelines (heavy work) to find [Plaintiff] not disabled (Tr. 37)." *Id.* The Commissioner submits that the ALJ was entitled to rely on the testimony of the VE in making her disability determination. Def.'s Br. 18. The Commissioner argues that Plaintiff's allegation that the ALJ relied on section 204 of the Grids is error. She notes that the ALJ used the Grids as a framework because Plaintiff had only non-exertional limitations and that the ALJ relied instead on the VE's testimony. *Id.* at 19.

At step five of the sequential evaluation, the Commissioner bears the burden of providing evidence of a significant number of jobs in the national economy that a claimant could perform. *Walls v. Barnhart*, 296 F.3d at 290. To improve both the uniformity and efficiency of this determination, the Commissioner promulgated the Medical Vocational Guidelines ("the Grids") located at 20 C.F.R. Part 404, Subpart P, App'x 2. *Heckler v. Campbell*, 461 U.S. 458, 461 (1983). The Grids consist of three tables, each representing a different residual functional capacity, including sedentary (table 1), light (table 2), and medium work (table 3). 20 C.F.R. Part 404, Subpt. P, App'x 2. Each table consists of a matrix of the four factors identified by Congress—physical ability, age, education, and work experience—and sets forth rules that identify whether jobs requiring specific combinations of these factors exist in significant numbers in the national economy. *Heckler*, 461 U.S. at 461–62. Where a claimant's qualifications correspond to the job requirements identified by a rule, the Grids direct a conclusion as to whether work exists that the claimant could perform. *Id.* at 462. If such work exists, the claimant is not considered disabled. *Id.*

Utilization of the Grids is predicated on the claimant suffering from exertional limitations. 20 C.F.R. § 404.1569a; *see* 20 C.F.R. Part 404, Subpart P, Appendix 2, Table 1, §

200.01(e)(1) ("The rules do not direct factual conclusions of disabled or not disabled for individuals with solely nonexertional types of impairments."). When, as in this case, a claimant suffers from solely nonexertional limitations, the Grids are not conclusive and may be used only as a guide. *Grant v. Schweiker*, 699 F.2d 189, 191-92 (4th Cir. 1983). The ALJ must inquire whether the nonexertional condition affects the claimant's RFC to perform work of which the claimant is exertionally capable. *Id.* "[I]f the claimant's nonexertional impairments limit the range of jobs available to a person with the claimant's exertional capabilities, then the Commissioner must produce a vocational expert to testify that the particular claimant retains the ability to perform specific jobs which exist in the national economy." *Adkins v. Astrue*, 2011 WL 652508, at *3 (E.D.Va. Feb. 10, 2011) (quoting *Grant*, 699 F.2d at 191-92) (internal quotations omitted).

Social Security Ruling 85-15 clarifies how the Grids are to be used when evaluating solely nonexertional impairments. SSR 85-15, 1985 WL 56857. The regulation provides that "[j]obs which can possibly be performed by persons with solely nonexertional impairments are not limited to the approximately 2,500 unskilled sedentary, light and medium occupations which pertain to the table rules in Appendix 2. The occupational base cuts across exertional categories through heavy (and very heavy) work and will include occupations above the unskilled level if a person has skills transferable to skilled or semiskilled occupations within his or her RFC." Id. at *3. The SSR discusses how the ALJ should approach decision-making:

> Given no medically determinable impairment which limits exertion, the first issue is how much the person's occupational base--the entire exertional span from sedentary work through heavy (or very heavy) work--is reduced by the effects of the nonexertional impairment(s). This may range from very little to very much, depending on the nature and extent of the impairment(s). In many cases, a decisionmaker will need to consult a vocational resource. . . . The second issue is whether the person can be expected to make a vocational adjustment considering the interaction of his or her remaining occupational base with his or her age,

education, and work experience. A decisionmaker must consider sections 404.1562-404.1568 and 416.962-416.968 of the regulations, *section 204.00 of Appendix 2*, and the table rules for specific case situations in Appendix 2.

*Id.* (emphasis added).

Here, the ALJ complied with the applicable guidelines in this case. The ALJ found that Plaintiff's "ability to perform work at all exertional levels has been compromised by non-exertional limitations." Tr. 36. The ALJ properly determined that strict application of the Grids was not possible and appropriately relied on VE testimony to "determine the extent to which these limitations erode the occupational base of unskilled work at all exertional levels." *Id.* The ALJ concluded that "[b]ased on the testimony of the vocational expert . . . considering the claimant's age, education, work experience, and residual functional capacity, the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy. A finding of 'not disabled' is therefore appropriate under the framework of section 204.00 in the Medical-Vocational Guidelines." Tr. 37. As the ALJ accounted for all of Plaintiff's limitations that were supported by the record and appropriately relied on VE testimony that Plaintiff could perform the occupations of garment bagger, addresser, and weight tester that existed in significant numbers in the national economy, the undersigned finds no error.

### 4.     Credibility Analysis

Plaintiff's final allegation of error relates to the ALJ's credibility determination. Plaintiff asserts "the ALJ failed to consider and evaluate her extensive, consistent forty-plus year work history when assessing her credibility, as required by Social Security Ruling 96-7p." Pl.'s Br. 34. Plaintiff further alleges that the ALJ's citation to evidence that Plaintiff "drove at least on occasion, and attended her medical appointments . . . is simply insufficient to support a finding that [Plaintiff] was not credible." *Id.* at 35. Plaintiff argues "the ALJ is selectively considering

the evidence" and did not properly evaluate her credibility. *Id.* at 35-36. The Commissioner asserts that substantial evidence supports the ALJ's credibility finding and "the ALJ considered Plaintiff's daily activities as just one factor in the credibility finding, (Tr. 33), and was entitled to do so." Def.'s Br. 15, 17. The Commissioner also contends the ALJ considered Plaintiff's work history and cited to it in her decision and because the ALJ "articulated legally sufficient reasons for her credibility finding, the ALJ's decision should not be disturbed on review." *Id.* at 18.

Social Security Ruling 96-7p provides that, prior to considering Plaintiff's subjective complaints, the ALJ must find there is an underlying impairment that has been established by objective medical evidence that would reasonably be expected to cause the subjective complaints of the severity and persistence alleged. Only then is the ALJ to move to the second step: consideration of the record as a whole, including both objective and subjective evidence, to assess Plaintiff's credibility regarding the severity of her subjective complaints, including pain. *See* SSR 96-7p, 1996 WL 374186, at *2; *see also* 20 C.F.R. § 404.1529(b); *Craig v. Chater*, 76 F.3d at 591-96. The requirement of considering a claimant's subjective complaints does not mean the Commissioner must accept those complaints on their face. The ALJ may consider the claimant's credibility in light of his testimony and the record as a whole. If the ALJ rejects a claimant's testimony about his pain or physical condition, the ALJ must explain the basis for such rejection to ensure that the decision is sufficiently supported by substantial evidence. *Hatcher v. Sec'y, Dep't of Health & Human Servs.*, 898 F.2d 21, 23 (4th Cir. 1989) (quoting *Smith v. Schweiker*, 719 F.2d 723, 725 n.2 (4th Cir. 1984)). "The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that

weight." 1996 WL 374186, at *4.

The Ruling further requires "[a]ssessment of the credibility of an individual's statements about pain or other symptoms and about the effect the symptoms have on his or her ability to function must be based on a consideration of all of the evidence in the case record." 1996 WL 374186, at *5. This evidence includes statements "about the individual's medical history, treatment and response, prior work record and efforts to work, daily activities, and other information concerning the individual's symptoms and how the symptoms affect the individual's ability to work." *Id.*

Here, Plaintiff testified that she tried to work at three different jobs but was fired from the first because she was unable to perform her duties due to severe panic attacks, fired from the second because she had "trouble with some employees," and the third time she was denied hire after a probationary period because her "supervisor appeared to have problems" with her. Tr. 50. The ALJ referenced this testimony in her decision and also noted Plaintiff's testimony describing "her past work as that of an EEG coordinator at a medical center" and her responsibilities in that position along with her testimony "that she had worked for a chiropractor in the past." Tr. 32. The ALJ also noted Plaintiff's work history in finding that she was unable to perform any of her PRW as defined by the regulations. Tr. 36. The ALJ further stated she considered Plaintiff's work experience in determining that Plaintiff was capable of making a successful adjustment to other work. Tr. 36-37. Accordingly, the record does not support Plaintiff's argument that the ALJ failed to properly consider Plaintiff's work experience. *Cf. Osgood v. Astrue*, C/A No. 2:08-CV-03386-DCN, 2010 WL 737839, at *8-9 (D.S.C. Mar. 2, 2010) (remanding case because the "ALJ did not mention plaintiff's work record anywhere in the disability decision or the credibility determination.").

Plaintiff contends the ALJ's reference to her activities of driving and attending medical appointments "is simply insufficient" to support a finding that Plaintiff is not credible. Pl.'s Br. 35. Plaintiff also asserts that the ALJ "selectively consider[ed] the evidence" in making her credibility determination. Pl.'s Br. 35-36. In support of this assertion, Plaintiff alleges that the ALJ "pulled out [Plaintiff's] one reference to her being stable on her medications, and ignored the testimony as to how debilitating her condition was even with medication." *Id.* at 35. Commissioner argues that "the ALJ considered Plaintiff's daily activities as just one factor in the credibility finding" and further argues that given Plaintiff's testimony "it was reasonable for the ALJ to deem Plaintiff's symptoms stable and rely upon that factor in the credibility finding." Def.'s Br. 17.

The ALJ noted Plaintiff's testimony indicating that "her mental conditions adversely affected her daily life including decline with respect to her personal hygiene, short-term memory loss, problems with understanding even simple instructions, and social withdrawal." Tr. 32. The ALJ also noted "that she took medications for her symptoms, which kept her stable with respect to avoidance of a nervous breakdown or suicidal ideation." Tr. 32. The ALJ outlined Plaintiff's medical treatment and determined that "[a]fter careful consideration of the evidence . . . [Plaintiff's] medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision." Tr. 33. The ALJ found:

> Specifically, the claimant testified that she would not be reliable on a job and could not follow even simple instructions; however, she continues to drive and even drove herself to the hearing. She testified that she had gotten lost when driving to the hearing, but she was actually early for her 9:00 a.m. hearing. The claimant also testified that she was very compliant with her medications, stayed by herself while her boyfriend worked and attended medical appointments by

> herself. All of these activities, by their very nature, require the ability to follow simple instructions and/or maintain concentration/attention. In addition, as previously discussed in detail above, the claimant's mental health exams have been relatively normal. Moreover, the claimant admitted during her testimony that she was stable on her prescribed medications.

Tr. 33. The undersigned finds that, as part of her review of the record as a whole, the ALJ considered Plaintiff's subjective complaints to determine her credibility as required by SSR 96-7p. *See* SSR 96-7p (requiring that ALJ "make a finding on the credibility of the individual's statements based on a consideration of the entire case record"). Factors the ALJ is to consider include claimant's daily activities; location, duration, frequency, and intensity of symptoms; use of pain medication or other treatments for subjective symptoms; or other factors related to functional limitations due to pain or other symptoms. *See id.*, 20 C.F.R. § 404.1529(c)(3).

The undersigned finds that substantial evidence supports the ALJ's credibility determination. "When considering whether an ALJ's credibility determination is supported by substantial evidence, the court does not replace its own credibility assessment for that of the ALJ; rather, the court scrutinizes the evidence to determine if it is sufficient to support the ALJ's conclusion." *Rholetter v. Colvin*, No. 9:12-cv-02341-DCN, 2014 WL 801326, at *6 (D.S.C. Feb. 27, 2014) (citing *Coleman v. Astrue*, 2011 WL 3924187, at *15 (S.D.W.Va. Sept. 7, 2011); *see Hays*, 907 F.2d at 1456 (holding that in reviewing the record for substantial evidence, the court does not re-weigh conflicting evidence, reach independent determinations as to credibility, or substitute its own judgment for that of the Commissioner)). "Because the ALJ had the 'opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight.'" *Id.* (quoting *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984)).

Upon review of the record, the ALJ's decision, and the parties' briefs, the undersigned finds Plaintiff's argument that the ALJ's failed to properly assess Plaintiff's credibility is without merit. The ALJ properly considered the medical and nonmedical evidence in determining Plaintiff's credibility and adequately explained her findings. Therefore, the ALJ's decision as to Plaintiff's credibility should be upheld.

III.    Conclusion and Recommendation

The court's function is not to substitute its own judgment for that of the ALJ, but to determine whether the ALJ's decision is supported as a matter of fact and law. Based on the foregoing, the court finds that the Commissioner performed an adequate review of the whole record, and the decision is supported by substantial evidence.

Accordingly, pursuant to the power of the court to enter a judgment affirming, modifying, or reversing the Commissioner's decision with remand in Social Security actions under Section 205(g), sentence four, 42 U.S.C. Sections 405(g), it is recommended that the Commissioner's decision be affirmed.

IT IS SO RECOMMENDED.


June 17, 2015                                      Kaymani D. West
Florence, South Carolina                          United States Magistrate Judge

**The parties are directed to note the important information in the attached**
**"Notice of Right to File Objections to Report and Recommendation."**